UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:  Chapter 11

Central Processing Services, LLC,  Case No. 19-43217

    Debtor.  Hon. Phillip J. Shefferly

_____/

## OPINION SUSTAINING IN PART AND OVERRULING IN PART OBJECTION TO PROOF OF CLAIM

### Introduction

This matter is before the Court on a Chapter 11 debtor's objection to a proof of claim filed by the Internal Revenue Service. For the reasons set forth in this opinion, the Court will sustain the objection in part and overrule it in part.

### Jurisdiction

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

### Facts

The facts in this case are not in dispute, but they are a little complicated and involve two separate Chapter 11 cases.

Central Processing Services, LLC ("CPS") is the debtor in this Chapter 11 case. CPS is in the business of providing printing, mailing and lockbox services in the fundraising and medical industries. Its customers are primarily charitable organizations. The owners of CPS are Richard T. Cole ("Cole") and Robert W. Burland ("Burland").

Cole and Burland also own other businesses. One of them, Associated Community Services, Inc. ("ACS"), is in the business of soliciting donations for charitable organizations by direct mail and telephone. ACS previously filed its own Chapter 11 case on March 13, 2014, case number 14-44095 ("ACS Case").

The largest creditor in the ACS Case was the Internal Revenue Service ("IRS"). Early in the ACS Case, the IRS filed a proof of claim for more than $15 million of employment related taxes, part of which was filed as secured, part priority, and part general unsecured. ACS objected to the proof of claim. While ACS and the IRS litigated the objection, ACS filed a plan of reorganization. Even though the litigation over the proof of claim continued, the IRS agreed to withdraw its objection to the ACS plan of reorganization. Basically, ACS and the IRS agreed upon an amount to be paid by ACS to the IRS each month while they continued to litigate over the proof of claim. On April 24, 2015, the Court entered an order in the ACS Case confirming the plan of reorganization ("ACS Confirmation Order").

After the ACS Confirmation Order was entered, ACS and the IRS continued to litigate the IRS proof of claim. During discovery, the IRS learned of facts that led it to believe that ACS may have fraudulently obtained the ACS Confirmation Order. On October 20, 2015, the IRS filed an adversary proceeding ("Adversary Proceeding") to revoke the ACS Confirmation Order.

Through more discovery in both the proof of claim litigation in the ACS Case, and in the Adversary Proceeding, the IRS learned of facts that led it to believe that CPS, as well as another entity owned by Cole and Burland, were alter egos of ACS that should be substantively consolidated with ACS. However, the IRS did not file a complaint seeking such relief because the IRS was able to reach a settlement of those claims.

On October 7, 2016, the IRS and ACS signed a Settlement Agreement that resolved the Adversary Proceeding as well as some of the issues in the litigation over the IRS proof of claim in the ACS Case. On November 9, 2016, the Court entered an order in the ACS Case approving the Settlement Agreement. In addition to resolving the Adversary Proceeding, the Settlement Agreement also contained provisions relating to CPS. And even though CPS was not a party to the Adversary Proceeding, CPS signed the Settlement Agreement.

Paragraph 2 of the Settlement Agreement states that CPS agrees to "guaranty to the IRS payment of the IRS's Secured Claim and Priority Claim" in the ACS Case. Paragraph 3 states that, "[f]or purposes of Subchapter 64 of the Internal Revenue Code . . . the IRS may treat" ACS and CPS "as substantively consolidated and as one entity, to wit, ACS, to the extent necessary to secure and collect the amounts guaranteed by CPS . . . ." Paragraph 12 states that "[i]n exchange for the guarantee and obligations of CPS" set forth in the Settlement Agreement, the "IRS releases CPS . . . from any claims of alter ego or nominee liability related to or involving ACS for the liabilities guaranteed by CPS" under the Settlement Agreement.

While the Settlement Agreement disposed of the Adversary Proceeding and resolved some other matters too, ACS and the IRS were still locked in litigation over the ACS objection to the IRS proof of claim. Finally, following mediation, the parties settled. On April 10, 2017, the Court entered an order in the ACS Case that approved a stipulation between ACS and the IRS that allowed the IRS (i) a secured claim of $5,883,255.00; (ii) a priority claim under § 507(a)(8) of the Bankruptcy Code of $3,616,745.00; and (iii) a general unsecured claim of $2,485,863.31. This order brought an end to the litigation between ACS and the IRS in the ACS Case, and the ACS Case was closed.

That brings us to this Chapter 11 case, filed by CPS on March 6, 2019. On April 4, 2019, the IRS filed a proof of claim. Since then, the IRS has amended its proof of claim three times. The Objection pertains to the second amended proof of claim, number 1-3, filed by the IRS on June 25, 2019 in the amount of $10,091,800.09 ("Proof of Claim"). The Proof of Claim states that of this total amount (i) $1,805,776.58 is secured; and (ii) $5,556,306.04 is entitled to priority under § 507(a)(8).

On June 28, 2019, CPS filed an objection ("Objection") (ECF No. 62) to the Proof of Claim. On August 2, 2019, the IRS filed a response (ECF No. 81), and on August 7, 2019, CPS filed a reply (ECF No. 82). On August 16, 2019, the Court heard the Objection and took it under advisement. Because the IRS cited some case law during the hearing that it had not previously cited, the Court allowed both CPS and the IRS to file a post-hearing supplement to their pleadings (ECF Nos. 94 and 97).

## **Burden of Proof**

> "During the claims allowance process, the burden of proof shifts between the parties. Initially, a creditor bears the burden of establishing its claim. . . .
>
> "If a party objects to the claim, the objecting party carries the burden of going forward with evidence to overcome the *prima facie* validity and amount of the claim. If the objecting party produces evidence to refute at least one of the allegations essential to the claim's

- 5 -

19-43217-pjs    Doc 117    Filed 09/05/19    Entered 09/05/19 11:31:32    Page 5 of 18

legal sufficiency, the burden of persuasion shifts back to the claimant. The claimant ultimately bears the burden of proving the validity of the claim by a preponderance of the evidence."

In re Kaid, 472 B.R. 1, 5 (Bankr. E.D. Mich. 2012) (quoting In re Hughes, 313 B.R. 205, 208-09 (Bankr. E.D. Mich. 2004) (citations omitted)).

## Issues

The Objection makes four arguments. First, the maximum amount of the Proof of Claim that should be allowed is the total of the secured portion and the priority portion of the proof of claim that the IRS filed in the ACS Case because that is all that CPS guaranteed in the Settlement Agreement. CPS did not guaranty payment of the general unsecured claim held by the IRS in the ACS Case. Second, no portion of the Proof of Claim should be allowed as a secured claim because the IRS has not perfected any liens against any property of CPS. Third, no portion of the Proof of Claim should be allowed as a priority claim under § 507(a)(8) because CPS's liability for the Proof of Claim is based only on a contract. Fourth, no portion of the Proof of Claim should be allowed for any amounts that the IRS has abated, but which are erroneously included in the Proof of Claim. Based on these four arguments, CPS concludes that the Proof of Claim should be allowed only as a non-priority, general unsecured claim in the amount of $5,409,381.79.

- 6 -

19-43217-pjs    Doc 117    Filed 09/05/19    Entered 09/05/19 11:31:32    Page 6 of 18

In its written response, the IRS addressed each of these arguments. However, at the hearing, the issues in dispute between ACS and the IRS narrowed considerably. The IRS began by stating that it no longer disputes CPS's first argument. The IRS acknowledged that the allowed amount of the Proof of Claim should not include any portion of the general unsecured claim filed by the IRS in the ACS Case. This is because CPS agreed in the Settlement Agreement to only guaranty payment of the allowed secured and priority claims of the IRS in the ACS Case. CPS did not guaranty payment of the allowed general unsecured claim of the IRS. Next, the IRS conceded CPS's second argument. The IRS agreed that none of the Proof of Claim should be allowed as a secured claim. No longer asserting a secured claim, the IRS now argued that the entire Proof of Claim should be allowed as a pre-petition unsecured priority claim under § 507(a)(8). The IRS then stated at the hearing that it would be filing an amendment to the Proof of Claim based on some "mathematical calculations" that the IRS was still working on that, among other things, would address the amounts that CPS argued had been abated.

A week after the hearing, on August 23, 2019, the IRS filed a third amended proof of claim in the amount of $6,896,267.83 and asserted that all of it is entitled to priority under § 507(a)(8). This opinion will not address the amount of the third

amended proof of claim filed by the IRS, and the right of CPS to object to the amount of the third amended proof of claim is expressly reserved.

There is now only one issue for the Court to decide in this opinion, and it is purely a legal issue: should the Proof of Claim be allowed as a priority claim under § 507(a)(8) or should it only be allowed as a general unsecured claim?

## **Discussion**

Section 507 of the Bankruptcy Code grants priority to certain claims and expenses. Section 507(a)(8) grants priority to nine different types of allowed unsecured claims of "governmental units." Included among these nine types of claims are five different types of taxes under § 507(a)(8)(A) – (E). The Proof of Claim asserts that it is filed with a priority under § 507(a)(8), but does not specifically identify any category of taxes under § 507(a)(8)(A) – (E). In the Objection, CPS does not dispute that the taxes owed by ACS fall within the types of taxes described in § 507(a)(8). Instead, CPS argues that it does not owe a tax *at all* because any liability it may have to the IRS for any portion of the Proof of Claim is based purely on contract. According to CPS, by signing the Settlement Agreement, it guaranteed payment of a certain debt owed to the IRS. But the underlying character and circumstances of that debt, and who else may also owe that debt, are

- 8 -

19-43217-pjs    Doc 117    Filed 09/05/19    Entered 09/05/19 11:31:32    Page 8 of 18

irrelevant because the liability of CPS to the IRS for that debt is based entirely on a contract — the Settlement Agreement.

In support, CPS points to what it describes as clear, unambiguous language in the Settlement Agreement: paragraph 3, in which CPS guarantees payment only of the secured and priority portions of the IRS claim in the ACS Case, not the entire allowed amount of such claim; paragraph 3, in which the provision permitting the IRS to treat ACS and CPS as "substantively consolidated as one entity, to wit, ACS" is limited only to certain collection actions taken against CPS; paragraph 9, which states that all of the Settlement Agreement's terms "are contractual"; and paragraph 12, which contains the IRS release of CPS from "alter ego" and "nominee liability" claims.

In response, the IRS basically makes two arguments. First, the IRS points to what it believes to be the controlling paragraph in the Settlement Agreement: paragraph 3, which allows the IRS to treat ACS and CPS as "substantively consolidated as one entity, to wit, ACS." According to the IRS, the effect of this paragraph is that CPS *is* ACS for purposes of the taxes owed by ACS. In other words, CPS is not just bound "by mere contract" to pay the debt that it guaranteed but is now in substance "one unitary debtor" with ACS for purposes of the subject tax owed by ACS. Second, the IRS argues that even if CPS is not substantively

consolidated with ACS, once it became a guarantor under the Settlement Agreement, its liability is for payment of taxes that are indisputably of the types described in § 507(a)(8).

CPS and the IRS agree that the Settlement Agreement is a contract and both of them base their arguments on the terms of that contract. Contracts "must be enforced as written, absent ambiguity or internal inconsistency." <u>Chrysler L.L.C. v. Plastech Engineered Prods., Inc.</u> (<u>In re Plastech Engineered Prods., Inc.</u>), 382 B.R. 90, 113 (Bankr. E.D. Mich. 2008) (citations omitted). In determining whether contractual language is ambiguous, "the Court must look at the contract as a whole giving harmonious effect, if possible, to each word and phrase. . . . [I]f the provisions of a contract are not ambiguous, the contract must be enforced as written." <u>Id.</u> (citations omitted).

In examining the Settlement Agreement, the Court begins with paragraph 3, the provision that refers to the concept of "substantive consolidation." Paragraph 3 is not ambiguous. The IRS is correct that paragraph 3 permits the IRS to treat ACS and CPS "as substantively consolidated and as one entity." But the express language of paragraph 3 clarifies that this consolidation is limited "to the extent necessary to secure and collect the amounts guaranteed by CPS." There is nothing in paragraph 3, or otherwise in the Settlement Agreement, that substantively consolidates ACS and

CPS for any other purpose, either as one taxpayer, or as one debtor in a bankruptcy proceeding. Even the IRS does not contend that ACS and CPS must now file a single tax return or are otherwise responsible for all of each other's taxes. Paragraph 3 simply permits the IRS to treat these two entities as one for the sole purpose of utilizing the collection procedure of Subchapter 64 of the Internal Revenue Code to collect the debt that CPS guaranteed in paragraph 2. Moreover, as CPS points out, in paragraph 12 of the Settlement Agreement the IRS expressly released CPS from "any claims of alter ego or nominee liability related to or involving ACS for the liabilities guaranteed by CPS" under paragraph 2. The Court agrees with CPS and rejects the IRS's argument that paragraph 3 controls this case by making ACS and CPS "one unitary debtor."

That leaves the question of whether CPS's liability for its guaranty under the Settlement Agreement is one of contract or tax. The Settlement Agreement does not directly address this question, but both CPS and the IRS cite case law in support of their respective legal positions.

CPS relies primarily on one case, Rizzo v. Mich. Dept. of Treasury (In re Rizzo), 741 F.3d 703 (6th Cir. 2014). Gaetano Rizzo was an officer in a corporation that failed to pay a state tax in Michigan. When Rizzo filed a Chapter 7 case, the Michigan Department of Treasury asserted that Rizzo was personally liable for the

corporation's tax under Michigan law. Further, because the tax was an excise tax under § 507(a)(8)(E), Rizzo's liability was nondischargeable in his bankruptcy case under § 523(a)(1) of the Bankruptcy Code. Rizzo did not dispute that he was personally liable for the corporation's unpaid tax. Nor did he dispute that the tax was an excise tax with respect to the corporation. However, Rizzo argued that because his liability for the tax was only "derivative" and not "primary," the unpaid tax was not an excise tax under § 507(a)(8)(E) as to him. Id. at 704. The bankruptcy court, the district court and the court of appeals all disagreed.

The Sixth Circuit rejected Rizzo's argument that the distinction between primary responsibility and derivative responsibility has any legal significance for purposes of § 507(a)(8).

> [T]he plain language of § 507(a)(8)(E) dooms Rizzo's argument unless Michigan's responsible-corporate-officer statute somehow imposes an obligation upon him that is of a different nature than the Company's duty to pay the excise tax deficiency that was assessed against it by Treasury. And it clearly does not: the statute does not create any obligations running from Rizzo to the Company, but simply makes Rizzo derivatively liable for the very same tax deficiency that was assessed against the company.

Id. at 707 (citations omitted).

The Sixth Circuit further explained that under the Michigan statute, Rizzo's liability to the Department of Treasury is no different than the liability of the corporation that was assessed with the tax.

- 12 -

> In other words, [the Michigan statute] does not impose an obligation upon Rizzo that is any different than that imposed upon the Company. Although Rizzo seems to argue that [the Michigan statute] creates obligations between himself and the Company such that his liability arises from an obligation to the Company rather than from Treasury's assessment of an excise tax, he misperceives the operation of the statute. [The statute] is simply a portion of the state taxation scheme that functionally pierces the corporate veil, imposing upon Rizzo personal liability for precisely the same tax deficiency — the *excise* tax deficiency — for which the Company was primarily liable. The mere fact that Michigan's taxation statutes hold Rizzo derivatively liable for the Company's unpaid excise tax does not mean that he is liable for something other than unpaid excise tax.

Id. at 708.

The holding and the discussion in Rizzo obviously do not help CPS. But here's why CPS relies on Rizzo. Toward the end of the opinion, in footnote 3, the Sixth Circuit distinguished Rizzo's situation from a hypothetical situation discussed in Rizzo's brief. Footnote 3 reads in its entirety as follows.

> Rizzo's case is distinguishable from a hypothetical example (to which he alludes on brief) where a party simply guarantees someone else's tax debt by contract. In that case, if the guarantor went bankrupt, the guarantor's liability to the debtor on the contract would be dischargeable notwithstanding the fact that the underlying obligation was a tax debt, given that the guarantor's liability had arisen under contract instead of under the derivative liability provisions of the statutory taxation scheme.

Id. at 708 n.3.

According to CPS, this footnote controls the case before this Court because CPS's liability to the IRS is based solely on a contract — the Settlement Agreement.

The IRS correctly notes that footnote 3 is dicta. More important, the hypothetical in the footnote is easily distinguishable from CPS's case. The hypothetical discusses a promise to pay that is made to a party that is not the governmental unit to whom the tax is owed. The footnote arguably might apply if CPS had made a promise to ACS that CPS would pay the IRS the tax debt owed by ACS. In that event, an action by ACS to collect against CPS would be based solely on a debt arising from a contract. But that is not what happened here. The guaranty made by CPS in the Settlement Agreement was given to the IRS, the governmental unit to whom the tax debt is owed, not to ACS. In contrast to the footnote 3 hypothetical, but consistent with the actual facts in Rizzo, it is the governmental unit that assessed the tax — the IRS — that holds the claim against CPS.

To the extent that Rizzo applies at all to this case, the IRS argues that it helps the IRS, not CPS. The Court agrees. But the IRS cites other case law too.

Of the cases cited by the IRS, the case that is factually closest to this case is In re LMS Holding Company, 149 B.R. 684 (Bankr. N.D. Okla. 1993). In that case, Mako Inc. filed a Chapter 11 case. Pursuant to a liquidating plan of reorganization confirmed by the bankruptcy court, Retail Marketing Company ("RMC") acquired certain of Mako's assets. Two years later, RMC filed its own Chapter 11 case. The IRS filed a proof of claim in RMC's case for employment related withholding taxes

and asserted priority under § 507(a)(7), the predecessor to what is now § 507(a)(8). RMC objected, arguing that "its liability to the United States was solely contractual in nature and, therefore, not of a type entitled to priority" under § 507(a)(7). Id. at 686. The LMS court rejected RMC's "solely contractual in nature" argument, remarking "'Once a tax, always a tax.'" Id. (quoting In re White Farm Equipment, 103 B.R. 177, 181 (Bankr. N.D. Ill. 1989) (involving successive bankruptcies and analyzing whether the "reconstituted" debtor "was separate and apart from the debtor in the original bankruptcy").[1]

CPS distinguishes White Farm because that case involved two separate Chapter 11 cases filed by the same debtor, unlike the case at bar. CPS distinguishes LMS because that case involved an entity that "assumed" a Chapter 11 debtor's tax debt, unlike this case in which CPS "guaranteed" payment of a Chapter 11 debtor's tax debt. These distinctions make no difference. The salient point of these two cases

---

[1] The LMS court also relied on § 507(a)(8)(C), which gives priority to "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." In LMS, the tax debt in question was indisputably of the type described in § 507(a)(8)(C) – a tax required to be collected or withheld. In the case before the Court, the Proof of Claim is silent as to whether the taxes owed by ACS and guaranteed by CPS are of the type described in § 507(a)(8)(C), or whether they are of the types described in § 507(a)(8)(A), (B), (D) or (E). The Objection does not address this question either. This lack of specificity makes no difference for purposes of the § 507(a)(8) priority, but it does make a difference for purposes of the application of § 507(a)(8)(C)'s "whatever capacity" language. Because the IRS did not specify how much of the Proof of Claim was of the type described in § 507(a)(8)(C), and did not argue in its response that § 507(a)(8)(C) applies, the Court expresses no view as to whether § 507(a)(8)(C)'s "whatever capacity" language applies to the Proof of Claim.

for purposes of the statutory priority is the nature of the tax at issue — not who owes it or how they became liable for it. In holding that the IRS was entitled to a priority claim in RMC's Chapter 11 case for the tax debt owed by Mako, the LMS court did not say anything that suggests that a different result would obtain where liability for the tax was acquired by means of a "guaranty" rather than by means of an "assumption." The important point to the LMS court was that the nature of the debt did not change: "As RMC acquired the 'exact obligation' of Mako, the nature of the United States' claim did not change by the mere transfer of the obligation from Mako to RMC." LMS Holding, 149 B.R. at 686.

Much like the debtor in LMS, which contracted to "assume" the tax debt of another, CPS in this case contracted to "guaranty" the tax debt of another. In both cases, the debtor contracted to be liable for a debt that was for a tax. In both cases, the debtor agreed to pay the tax debt to the governmental unit, not to the other party to the contract. In these circumstances, there is no functional difference between an assumption or a guaranty. The fact that CPS guaranteed payment of that debt does not change the character of the debt. It is still a debt for a tax. The guaranty simply means that CPS is now liable for that debt. The holder of the claim for that debt is the IRS — the governmental unit to whom the tax is owed.

- 16 -

## Conclusion

The Settlement Agreement is clear and unambiguous. The IRS is only entitled to an allowed claim for the amount that CPS guaranteed in the Settlement Agreement. That consists solely of the total of the IRS's "Secured Claim" and "Priority Claim" in the ACS Case, not the IRS's unsecured claim in the ACS Case. The IRS now concedes that the Proof of Claim is not a secured claim in CPS's Chapter 11 case, but still maintains that the Proof of Claim is a priority claim under § 507(a)(8).

To warrant priority under § 507(a)(8), an allowed unsecured claim must be held by a governmental unit. The claim must be for taxes of the specific types described in § 507(a)(8). CPS does not dispute that the IRS holds the Proof of Claim. Nor does CPS dispute that the tax debt owed by ACS, guaranteed by CPS under paragraph 2 of the Settlement Agreement, consists of taxes of the types listed in § 507(a)(8)(A), (C) and (D). CPS argues that the Proof of Claim should not be granted priority under § 507(a)(8) in its Chapter 11 case solely because of the manner by which CPS became liable for this tax debt — by agreeing contractually to pay it. As explained, the Court rejects the notion that the guaranty of payment of this tax debt somehow changed its character so that it is no longer a tax debt. The

debt that CPS agreed to pay is and remains a tax debt owed to the IRS. The Proof of Claim is entitled to priority under § 507(a)(8).

As noted earlier, the IRS has now filed a third amended proof of claim for $6,896,267.83. That amount is significantly reduced from the Proof of Claim. Therefore, the Court will not make any ruling in this opinion on the amount of the Proof of Claim to be allowed, but will reserve for CPS its right to examine the third amended proof of claim and its right to object to the amount to be allowed.

The Court has already entered a separate order (ECF No. 115) granting relief consistent with this opinion.

**Signed on September 05, 2019**



/s/ Phillip J. Shefferly
Phillip J. Shefferly
United States Bankruptcy Judge