UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:  Chapter 11

Central Processing Services, LLC,  Case No. 19-43217

    Debtor.  Hon. Phillip J. Shefferly

_____/

# OPINION DENYING UNITED STATES OF AMERICA'S MOTION FOR ACCOUNTING, DISGORGEMENT, AND OTHER RELIEF

## Introduction

This matter concerns the authority and discretion of a bankruptcy court in a dismissed bankruptcy case to grant various forms of relief that are requested after the case has been dismissed.

The United States of America, on behalf of the Internal Revenue Service ("IRS"), requested dismissal of this Chapter 11 case. The Court granted that request. After the case was dismissed, the IRS filed a motion for an accounting, disgorgement and injunctive relief. For the reasons set forth in this opinion, the Court will deny the motion.

## Facts

The following facts are taken from the Court file and are not in dispute.

Central Processing Services, LLC ("CPS") is the debtor in this Chapter 11 case. CPS is in the business of providing printing, mailing and lockbox services in the fundraising and medical industries. Its customers are primarily charitable organizations. The owners of CPS are Richard T. Cole ("Cole") and Robert W. Burland ("Burland").

Cole and Burland also own other businesses. One of them, Associated Community Services, Inc. ("ACS"), is in the business of soliciting donations for charitable organizations by direct mail and telephone. ACS previously filed its own Chapter 11 case on March 13, 2014, case number 14-44095 ("ACS Case").

The largest creditor in the ACS Case was the Internal Revenue Service ("IRS"). Early in the ACS Case, the IRS filed a proof of claim for more than $15 million of unpaid withholding and other employment related taxes. ACS objected to the proof of claim. After extensive litigation, ACS and the IRS agreed to an order that allowed the IRS a claim of just under $12 million. As part of the settlement, CPS agreed to guarantee part of ACS's debt to the IRS.

On March 6, 2019, CPS filed this Chapter 11 case. The IRS is by far the largest creditor in the case. CPS's schedules list the IRS as holding a claim of more than $9 million, based on the guaranty. The IRS filed an amended proof of claim in the CPS case on June 25, 2019 in the amount of $6,896,267.83.

Much like the ACS Case, the predominant issue in the CPS case was the treatment of the IRS's claim. On June 28, 2019, CPS filed an objection to the IRS's proof of claim. The IRS filed a response, and the Court heard the objection on August 16, 2019. On September 5, 2019, the Court issued an opinion[1] holding that the IRS's allowed claim was entitled to priority under § 507(a)(8) of the Bankruptcy Code. That meant that, under § 1129(a)(9)(C) of the Bankruptcy Code, the IRS would have to receive the total value of its allowed claim on the effective date of any confirmed plan of reorganization.

While CPS and the IRS litigated over the allowance and priority of the IRS's proof of claim, the IRS was also active in seeking other relief in this case. On August 1, 2019, the IRS filed a motion to dismiss this Chapter 11 case ("Dismissal Motion"). The IRS argued in the Dismissal Motion that there was cause for dismissal under § 1112(b)(1) of the Bankruptcy Code for two reasons. First, cause existed under § 1112(b)(4)(A) because of a substantial, continuing loss to the CPS estate and the absence of any reasonable likelihood of rehabilitation. Second, cause existed under § 1112(b)(4)(I) because CPS failed to timely pay post-petition taxes to the IRS.

In support of both arguments, the IRS relied on CPS's own information that it provided in the monthly operating reports filed with the Court. Citing CPS's

---

[1] In re Central Processing, LLC, __ B.R. __, 2019 WL 4233548 (Bankr. E.D. Mich. 2019).

monthly operating reports for the months of March through June, 2019, the IRS noted that CPS experienced a cumulative loss during that period of $648,684.00. Citing those same operating reports, the IRS next noted that during this same period CPS failed to pay the IRS $121,375.00 of post-petition withheld income taxes, and $42,063.00 of post-petition withheld FICA taxes.

Although § 1112(b)(1) authorizes the Court to dismiss a Chapter 11 case or convert it to Chapter 7, whichever is in the best interest of creditors, the IRS did not seek conversion, and expressly stated in the Dismissal Motion that "the United States seeks dismissal, not conversion, of the case." Consistent with that request, the proposed order attached to the Dismissal Motion provided only for dismissal, not conversion, of CPS's case.

CPS filed an objection to the Dismissal Motion, but the only creditors who filed responses all supported it. On August 22, 2019, the Federal Trade Commission ("FTC"), and the states of Idaho, Kansas, Maryland, and Michigan all filed concurrences to the Dismissal Motion. The Court scheduled a hearing on the Dismissal Motion for September 6, 2019.

The day before the hearing on the Dismissal Motion, CPS filed a "modification" to its objection, which stated that CPS consented to dismissal, so long as the order dismissing the case contained certain provisions regarding professional fee applications, payment of United States Trustee ("UST") fees and

closing of the case. At the hearing the following day, CPS confirmed on the record its consent to dismissal. The FTC and the states of Idaho, Kansas, Maryland, and Michigan all stated on the record at the hearing that they also consented to dismissal. In addition, CPS's landlord, HJH Southfield, 2 LLC, although not having filed a response to the Dismissal Motion, stated on the record that it too consented to dismissal, as did the UST.

The IRS noted at the hearing that there were no longer any pending objections to the Dismissal Motion, and that the only issues remaining were "the terms of the dismissal." The IRS had attached the form of a proposed order[2] to the Dismissal Motion that succinctly stated only that the Dismissal Motion is "granted" and that the "bankruptcy case is dismissed for cause, pursuant to 11 U.S.C. § 1112(b)(1)." Despite that fact, the IRS now stated that it wished to submit a revised proposed dismissal order.

The IRS then handed the Court a paper copy of a revised, much longer proposed order with the following new provisions: an injunction barring CPS from filing a bankruptcy case for 180 days; a directive that CPS file all past-due state and federal tax returns within 30 days; an injunction barring any payments to CPS's professionals, principals and related companies until all post-petition state and

---

[2] E.D. Mich. LBR 9014-1(c)(1) requires a moving party to attach a copy of a proposed order to its motion.

federal taxes were paid in full; a directive that CPS file a schedule of all post-petition disbursements made by CPS to its professionals, principals and related companies within 30 days; and a provision for the Court to retain jurisdiction "to hear any motions for disgorgement of any disbursements and payments necessary to unwind the bankruptcy, and over any fee applications and objections thereto." The IRS explained that it had not yet circulated a copy of the revised proposed order to CPS, the UST or any other parties, but had copies available to distribute to them at the hearing. CPS, the UST, and all creditors in attendance at the hearing requested that they be given an opportunity to review and approve the form of any revised proposed dismissal order before submission to the Court for entry.

The Court granted the Dismissal Motion, finding that the IRS had established cause for dismissal under § 1112(b), and finding that the IRS, CPS, the UST and all creditors in attendance at the hearing agreed that the case should be dismissed. However, the Court explained that it would not try to settle the form of the proposed order on the record at the hearing because CPS, the UST and the creditors at the hearing had not yet seen the draft of the IRS's revised proposed order, with its new provisions. In addition, CPS and the UST both stated that they too had additional terms that they wished to include in the order. The Court therefore instructed the IRS, as the prevailing party, to prepare and circulate to CPS, the UST and the creditors who attended the hearing, a draft of a proposed order and seek their

approval as to its form. The Court further instructed the IRS that if it was unable to promptly obtain approval by all parties to the form of a dismissal order, then the IRS should use the procedure set forth in the Local Bankruptcy Rules for the presentment of a proposed order.[3]

The Court was willing to permit the parties some time following the hearing to agree on the form of an order to memorialize the Court's ruling dismissing this Chapter 11 case. However, when two weeks went by after the hearing without a proposed order being submitted to the Court, and without the Court hearing anything further from the parties, the Court entered its own order to avoid further delay. On September 23, 2019, the Court entered an Order Dismissing Chapter 11 Case ("Dismissal Order") (ECF No. 127).

The Dismissal Order states that the Dismissal Motion is granted and that the Chapter 11 case is dismissed under § 1112(b) of the Bankruptcy Code. The Dismissal Order grants only the relief requested in the Dismissal Motion — i.e., dismissal of the Debtor's Chapter 11 case — and contains none of the additional provisions that the IRS described in the draft of the revised proposed order that it handed to the Court at the hearing. The only difference between the Dismissal Order and the original proposed order that the IRS had attached to the Dismissal Motion,

---

[3] E.D. Mich. LBR 9021-1(a)(4) permits the prevailing party to file a proposed order with a notice that it will be submitted for entry if written objections are not filed within seven days.

is that the Dismissal Order requires that any fee applications or other requests for relief in this case must be filed no later than October 7, 2019. The Court added that deadline to ensure that if there were any further filings by any party in this dismissed case, they be made as soon as possible so that the Court could promptly close this case consistent with its ordinary practice.

After the case was dismissed, but within the time set by the Court, the IRS filed a Motion for an Accounting, Disgorgement, and Other Relief ("Disgorgement Motion") (ECF No. 135). On October 18, 2019, CPS filed an objection (ECF No. 140).[4] On October 29, 2019, the Court held a hearing and took the Disgorgement Motion under advisement.

## **The parties' positions**

The IRS argues in the Disgorgement Motion that because CPS failed to make post-petition payments of taxes to the IRS, the IRS is entitled to an accounting of any amounts that CPS paid as wages during the Chapter 11 case and that the IRS should not be required to wait until the end of 2019 to learn from the employees' W-2s the actual amount of wages paid by CPS. For the same reason, the IRS argues that it is also entitled to an accounting of any payments made or arrangements for payments to be made by CPS to any of its professionals. Further, the IRS argues

---

[4] The IRS also filed a post-dismissal motion to bar CPS from filing another bankruptcy case for 180 days, but CPS does not object to the relief requested by that motion.

that its administrative expense claim for unpaid post-petition taxes is required to be treated equally with other administrative expense claims, specifically payments to professionals. Finally, depending upon what CPS's accounting shows, the IRS argues that it is entitled to disgorgement of such amounts as are necessary to ensure that its administrative expense claim receives at least an equal pro rata distribution along with other administrative expense claims.

CPS argues that the Disgorgement Motion must be denied because the Court does not have jurisdiction to grant the relief requested in the Disgorgement Motion now that this Chapter 11 case has been dismissed. If the IRS wanted the relief that it now seeks in the Disgorgement Motion, it must have requested such relief prior to the time that the Court granted the IRS's request to dismiss this case. CPS next argues that even if the Court does have jurisdiction to grant such relief, the IRS cannot demonstrate that it is entitled to such relief in this case. Finally, CPS argues that there is no requirement that all administrative expense claimants receive equal pro rata distributions in a dismissed case.

## **Applicable law**

### The meaning of dismissal

A bankruptcy case is a judicial proceeding that is started by the filing of a petition. Like other types of judicial proceedings, there are multiple ways in which a bankruptcy case may end. A Chapter 7 case may end when the trustee has

administered all property of the estate and filed a final report.  A Chapter 11 case may end with consummation of a confirmed plan of reorganization.  A Chapter 13 case may end with a debtor obtaining a discharge after completing all payments required by a confirmed plan.  Or, a case under any of these chapters may end by dismissal: a Chapter 7 case may be dismissed under § 707, a Chapter 11 case may be dismissed under § 1112, and a Chapter 13 case may be dismissed under § 1307.

The meaning of a dismissal of a judicial proceeding is well understood — Black's Law Dictionary defines "dismiss" as meaning "to send [ ] away; specif., to terminate (an action or claim) without further hearing[.]"  <u>Black's Law Dictionary</u> at 482 (7th ed. 1999).

The Bankruptcy Code does not have a section that defines dismissal, but it does specify the "Effect of dismissal" in § 349.  That section has two subparts.  Section 349(a) describes the effect of dismissal of a bankruptcy case on a later case filed by the same debtor.  Section 349(b) describes the effect of dismissal on various actions taken while the case was pending.  Section 349(b)(1) reinstates certain proceedings that were superseded by the case, and certain transfers and liens that were avoided.  Section 349(b)(2) vacates certain orders and judgments that were entered while the case was pending.  Section 349(b)(3) revests the property of the estate in those entities that owned such property prior to the case being filed.

The Supreme Court discussed the meaning and effect of dismissal in Czyzewski v. Jevic Holding Corp., ___ U.S. ___, 137 S. Ct. 973 (2017). The specific issue in Jevic was whether a bankruptcy court may authorize the distribution of settlement proceeds in a dismissed Chapter 11 case in a manner contrary to the priority scheme that governs a plan of reorganization in Chapter 11. Jevic held that a bankruptcy court does not have such authority. The Supreme Court explained that the "basic purpose" of dismissal "'is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'" Id. at 984 (quoting H.R. Rep. No. 95-595, at 338 (1977)). The Supreme Court concluded that:

> Nothing [ ] in the [Bankruptcy] Code authorizes a court ordering a dismissal to make general end-of-case distributions of estate assets to creditors of the kind that normally take place in a Chapter 7 liquidation or Chapter 11 plan — let alone final distributions that do not help to restore the *status quo ante* or protect reliance interests acquired in the bankruptcy . . . .

Id. at 984-85.

There is nothing in the Bankruptcy Code to suggest that the term "dismissal" means anything different for a bankruptcy case than it does for any other judicial proceeding. When a bankruptcy case is dismissed, the case is "undone," the parties, with a few exceptions specified in the statute, are put back where they were before the case was filed, and the proceeding comes to an end.

## Bankruptcy court's authority after dismissal

Even after a bankruptcy case is dismissed, it is not uncommon for a party to request some form of relief because dismissal, while ending the case, may not automatically wind up all the administrative matters in the case. For example, a trustee may seek approval of a final report. Or a professional appointed in the case may seek approval of the fees and expenses they incurred in administering the estate before the case was dismissed. In addition, and quite apart from administrative matters, a party may sometimes come back to the bankruptcy court after dismissal to vindicate rights that the Bankruptcy Code conferred on the party while the case was pending (e.g., damages for an individual debtor under § 362(k) for injury caused by a willful violation of the automatic stay, or protection under § 525 from discriminatory treatment because of the bankruptcy case).

The Sixth Circuit Court of Appeals has held that dismissal of a bankruptcy case does not necessarily mean that the bankruptcy court lacks jurisdiction to hear and decide any requests for relief post-dismissal. "[D]ismissal of an underlying bankruptcy case does not automatically strip a federal court of residual jurisdiction to dispose of matters after the underlying bankruptcy case has been dismissed[.]" Javens v. City of Hazel Park (In re Javens), 107 F.3d 359, 364 n.2 (6th Cir. 1997). ""[A]s a general rule, the dismissal of a bankruptcy case should result in the dismissal of "related proceedings" because the court's jurisdiction of the latter

depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings.'" Dery v. Cumberland Casualty & Surety Co. (In re 5900 Associates, Inc.), 468 F.3d 326, 330 (6th Cir. 2006) (quoting Smith v. Commercial Banking Corp. (In re Smith), 866 F.2d 576, 580 (3d Cir. 1989)). However, not all post-dismissal matters are "related proceedings." For example, the Sixth Circuit expressly found in Dery v. Cumberland that approval of attorney fees is not a "related proceeding," but instead "is part of the original proceeding" and dismissal "cannot abrogate the bankruptcy court's statutorily imposed duty [to] review" fee applications. Id. (citations omitted). A bankruptcy court has discretion to consider such matters, and the "exercise of such jurisdiction is left to the sound discretion of the trial court." In re Javens, 107 F.3d at 364 n.2.

## Discussion

Based on Dery and Javens, the Court finds that it does have jurisdiction over the Disgorgement Motion. The facts alleged in the Disgorgement Motion occurred while CPS was a debtor in a Chapter 11 case. The monthly operating reports that the Disgorgement Motion cites are reports that are required by the UST for all Chapter 11 debtors. Those facts are sufficient to show a nexus between the Disgorgement Motion and CPS's bankruptcy case.

The more difficult question is whether the Court should exercise its discretion in the circumstances of this case. As explained earlier, the IRS seeks three forms of

relief in the Disgorgement Motion: an accounting, an injunction and disgorgement. The Court will address them in sequence.

The Disgorgement Motion's request for an accounting is basically a discovery request. The IRS understandably wants an explanation from CPS as to why the information contained in its monthly operating reports filed with the Court differs from the information that CPS has provided to the IRS in the returns it has filed with the IRS. The IRS wants to know what wages CPS paid to its employees, what taxes it withheld from them, and what taxes it paid to the IRS. The IRS has a legitimate need for that information. And it is not unreasonable for the IRS to also want to know the details about any payments CPS has made to its professionals.

Ordinarily, a bankruptcy court permits discovery in connection with an adversary proceeding or contested matter, and the scope of that discovery is governed by the Federal Rules of Civil Procedure. In a bankruptcy case, discovery can also be taken under Fed. R. Bankr. P. 2004. But here, when the IRS filed the Disgorgement Motion, there was no pending adversary proceeding, contested matter, or bankruptcy case for which discovery is needed. The IRS does not argue that it now needs discovery of facts to prosecute a pending adversary proceeding or pending contested matter, nor to enforce or interpret any order that was entered in the dismissed bankruptcy case. The IRS does not dispute that the real reason to now take discovery is to enable the IRS to bring *new* legal proceedings and obtain *new*

remedies against CPS, Cole, Burland and others for CPS's failure to pay post-petition taxes.

The Court has no hesitation in encouraging the IRS to avail itself of all remedies available to it under applicable non-bankruptcy law because of the failure of CPS to pay withholding and employment related taxes. But the discovery that the IRS requests in the Disgorgement Motion is not relevant to any remedy requested by the IRS before it successfully sought and obtained dismissal of this bankruptcy case. Whatever value the IRS may obtain by discovering information about CPS's payment or non-payment of taxes during the time that CPS was in Chapter 11, pertains solely to the IRS's pursuit of remedies under applicable non-bankruptcy law. No bankruptcy law purpose would be served in this dismissed Chapter 11 case by now permitting the IRS to embark on a wide-ranging discovery mission untethered to any pre-dismissal request for relief under the Bankruptcy Code. See River Ranch, Inc. v. Outdoor Resorts River Ranch Inns & Cottages Condominium Ass'n, Inc. (In re River Ranch, Inc.), 188 B.R. 693 (Bankr. M.D. Fla. 1995) (declining to retain jurisdiction to order an accounting of rent in dismissed Chapter 11 case because "these issues of accounting are more appropriately resolved by the state court").

The Disgorgement Motion's request for an injunction against further payments to professionals is unnecessary. The IRS has already filed objections to

the applications for allowance of fees and expenses for the professionals hired by CPS. The Court intends to thoroughly review those applications and permit the IRS a full and fair opportunity to object to their allowance. There is no reason for the Court to issue a blanket injunction against the payment of any professional fees requested by CPS's professionals when the allowance and payment of those fees is already fully subject to the Court's control.

The Disgorgement Motion's request for disgorgement is based on the IRS's contention that all administrative expense claims are entitled to a pro rata share of any distribution of estate property. True enough. But there has been no distribution of estate property, and there will be no distribution of estate property in this dismissed case. The cases cited by the IRS in the Disgorgement Motion in support of disgorgement are inapplicable because they involve *pending,* not *dismissed* bankruptcy cases. See Begier v. Internal Revenue Service, 496 U.S. 53, 56 (1990) (liquidating Chapter 11 case in which a trustee had been appointed); Specker Motor Sales Co. v. Eisen, 393 F.3d 659, 661 (6th Cir. 2004) (Chapter 11 case converted to Chapter 7); In re Kaiser Steel Corp., 74 B.R. 885, 888 (Bankr. D. Colo. 1987) (ongoing Chapter 11 case); In re Barron, 73 B.R. 812, 813-14 (Bankr. S.D. Cal. 1987) (ongoing Chapter 11 case).

If the IRS wanted to have a distribution of estate property, it could have requested that this case be converted to Chapter 7 rather than dismissed. In a

Chapter 7 case, a trustee would have been appointed and estate property would have been distributed under § 726. The central bankruptcy law policy of equitable distribution would have been applicable. But there is no distribution of estate property in a dismissed case because there is no longer an estate. As noted earlier, § 349(b) states that on dismissal, property of the bankruptcy estate revests in the entities that owned such property prior to the bankruptcy case being filed and, therefore, there is no estate property to be distributed. The IRS expressly requested this result, rather than conversion to Chapter 7, and all of the responding creditors agreed. The IRS has not cited a single case in which a court has held that there must be equitable distribution of property of the estate in a dismissed case because, by definition, there is no longer any bankruptcy estate property to be distributed once the case is dismissed.

The IRS makes one final argument that requires discussion. The IRS argues that, because the Dismissal Order set an outside date of October 7, 2019 for any party to file any request for relief in this case, the Court somehow retained jurisdiction to grant the relief requested in the Disgorgement Motion. Not so. As explained earlier, the Court only set the deadline of October 7, 2019 in the Dismissal Order to have an outside date for any fee applications or other requests for relief to be filed. The Court did not express any view about the merits of any post-dismissal relief that a party might request, nor did it either explicitly or implicitly reserve

jurisdiction to hear any post-dismissal requests for relief. As a matter of management of its docket, the Court set an outside deadline for any party to file whatever they intended to file with the Court before the Court closed this dismissed case in accordance with its ordinary practice. Nothing in the Dismissal Order supports the argument that the Court stated that it would reserve and would exercise jurisdiction over the Disgorgement Motion.

## Conclusion

The Court does have residual jurisdiction to consider the Disgorgement Motion, but this is not a good case in which to exercise that jurisdiction. Simply put, the Court is not going to permit the IRS to use CPS's failure to pay taxes as the basis to request dismissal and then, having succeeded in that request — ending the case — permit the IRS to turn around and begin to file in the dismissed case brand new requests for relief that the IRS could have brought while the case was still pending, based on the very same failure to pay taxes.

The IRS chose to file the Dismissal Motion. It did not seek conversion of this case to Chapter 7, which would have continued this bankruptcy case and arguably would have allowed the Court to implement the remedies described by the Sixth Circuit in <u>Specker</u> and other cases with respect to the equitable of treatment of administrative expenses. The Court is not critical of the IRS's decision to file the Dismissal Motion and end this bankruptcy case. But once the Court granted the

Dismissal Motion and entered the Dismissal Order, this case was over. As explained in Jevic, once a bankruptcy case is dismissed, the bankruptcy estate ceases to exist and the parties are returned to their pre-bankruptcy positions as far as is possible with their rights and obligations relative to one another governed by applicable non-bankruptcy law. Jevic, 137 S. Ct. at 979.

The Court does not in any way condone CPS's failure to pay post-petition taxes. The Court fully expects the IRS to seek and obtain in an appropriate, non-bankruptcy forum all of the remedies that the Internal Revenue Code and federal law provide against the offending parties, but the bankruptcy case in this Court is over. The Court will enter a separate order, consistent with this opinion, denying the Disgorgement Motion.

**Signed on November 05, 2019**



/s/ Phillip J. Shefferly
**Phillip J. Shefferly**
**United States Bankruptcy Judge**