UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                          Chapter 11

Central Processing Services, LLC,               Case No. 19-43217

         Debtor.                                Hon. Phillip J. Shefferly
_____/

### OPINION GRANTING IN PART AND DENYING IN PART FEE APPLICATIONS OF PROFESSIONALS FOR THE DEBTOR IN POSSESSION

### Introduction

This matter is before the Court on the fee applications of Schafer and Weiner, P.L.L.C. ("SW") and Harmon Partners, LLC ("Harmon"). SW is the law firm that represented Central Processing Services, LLC ("Debtor"), the Debtor in Possession in this Chapter 11 case, and Harmon is the financial advisor to the Debtor.

The Debtor is in the business of providing printing, mailing and lockbox services in the fundraising and medical industries. The Debtor filed this Chapter 11 case on March 6, 2019. The case was pending for just about six months. On August 1, 2019, the United of America, on behalf of the Internal Revenue Service ("IRS"), moved to dismiss this case. The Court granted the motion at a hearing on

September 6, 2019.  SW and Harmon have now filed applications for compensation for the services they rendered for the Debtor during the Chapter 11 case.

On October 2, 2019, SW filed a first and final fee application ("SW Application") (ECF No. 131) for $132,651.50, plus reimbursement of costs in the amount of $3,805.49.  On the same day, Harmon filed a first and final fee application ("Harmon Application") (ECF No. 132) for $36,645.00.

The United States Trustee ("UST") filed an objection to the SW Application, but not the Harmon Application.

On October 22, 2019, the IRS filed a consolidated objection ("IRS Objection") (ECF No. 145) to both fee applications.  On October 25, 2019, SW and Harmon filed a reply ("Reply") (ECF No. 149) to the IRS Objection.

On November 22, 2019, the Court held a hearing.  SW and the UST advised the Court that they are willing to settle the UST objection to the SW Application by SW agreeing to a $20,000.00 reduction in its fees.  After hearing arguments by the IRS and by SW, both for itself and for Harmon, the Court took the fee applications under advisement.

## Jurisdiction

This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and 157(a), and Local Rule 83.50(a) (E.D. Mich.), which refers bankruptcy-related matters to the Bankruptcy Court.  Even though the Debtor's case has been dismissed,

the Court retains jurisdiction to hear and adjudicate applications for fees for professionals whose employment was approved by an order of the Court. A "bankruptcy court may retain jurisdiction over matters related to the bankruptcy even after the underlying case has been adjudicated or dismissed." Dery v. Cumberland Casualty & Surety Co. (In re 5900 Associates, Inc.), 468 F.3d 326, 330 (6th Cir. 2006). This includes jurisdiction to hear fee applications. Id. (finding that the approval of attorney fees is not a related proceeding, but instead "is part of the original proceeding").

## Applicable legal standard

"The payment of attorneys who are appointed pursuant to 11 U.S.C. § 327 is governed by 11 U.S.C. § 330[.]" Dery v. Cumberland Casualty, 468 F.3d at 329. Section 330(a)(1)(A) provides that the Court may award "reasonable compensation for actual, necessary services rendered by . . . [a] professional person, or attorney and by any paraprofessional person employed by any such person . . . ."

In determining reasonable compensation, § 330(a)(3) lists nonexclusive factors for the Court to consider:

(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

- 3 -

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

In addition, § 330(a)(4)(A)(ii) provides that the Court shall not allow compensation for services that were not reasonably likely to benefit the estate or necessary to the administration of the case.

In <u>Boddy v. United States Bankruptcy Court</u> (<u>In re Boddy</u>), 950 F.2d 334, 337 (6th Cir. 1991), the Sixth Circuit Court of Appeals directed that bankruptcy courts should use the lodestar method in determining reasonable compensation under § 330(a) of the Bankruptcy Code, where the attorney's reasonable hourly rate is multiplied by the number of hours reasonably expended.

## **The IRS Objection**

The IRS Objection does not complain about the hourly rates charged by SW or Harmon or the amount of time they took to perform their services. The IRS Objection instead complains that some of the services performed by SW and Harmon were not necessary to the administration of, nor beneficial to, the Debtor's case at the time the services were performed, as required by § 330(a)(3)(C). Nor were they reasonably likely to benefit the Debtor's estate, as required by

- 4 -

§ 330(a)(4)(A)(ii)(I). Because the concepts embodied in these two sections are similar and somewhat overlap, the Court will discuss them together.

Fundamentally, the IRS argues that the Debtor's Chapter 11 case "was doomed to failure from the outset" because: the IRS was by far the largest creditor in the case; the Debtor had not been profitable for over 2-1/2 years; the Debtor has been, and continues to be, under investigation by the Federal Trade Commission; and the Debtor "never intended to comply with their obligation to pay post-petition taxes." The IRS argues that these facts combine to demonstrate that the Debtor had no hope for Chapter 11 success, "reorganization was implausible," and SW and Harmon should have consented to a voluntary dismissal of the case when requested to do so by the IRS.

The IRS Objection does not argue that all fees sought by SW and Harmon should be disallowed, only that all fees incurred by SW and Harmon after June 30, 2019 should be disallowed because, by that time, SW and Harmon knew or should have known that this case could not be salvaged and the Debtor could not reorganize. The prayer for relief in the IRS Objection requests that the Court "approve no more than $77,473.50 in professional fees" to SW and "approve no more than $21,770.00 in professional fees" to Harmon.

SW and Harmon concede that the Debtor failed to pay its post-petition taxes, but argue that they are not guarantors of the Debtor's responsibilities. They argue

- 5 -

that they should be compensated for all their services because those services were necessary to the administration of the case and because they had at all relevant times a reasonable belief that the Debtor could reorganize based on a proposed change to its business model and based on the Debtor's efforts to obtain post-petition financing. To help the Debtor achieve a successful reorganization, they worked hard to try to obtain a post-petition loan to enable the Debtor to repay its delinquent post-petition taxes.

SW and Harmon point out that the IRS was well aware of their efforts to obtain a post-petition loan and that the IRS was "supportive of those efforts" up until July 30, 2019, at which time the IRS definitively informed SW and Harmon that it withdrew its support. According to SW and Harmon, it was only then that "the Professionals knew that the Debtor could not reorganize." In support, SW and Harmon attach to the Reply a string of emails between the attorneys for the IRS and SW during July, 2019 to show that the IRS knew that the Debtor was behind in its post-petition taxes but was continuing to work with the Debtor and support the Debtor's efforts to obtain a post-petition loan to pay off those delinquent taxes. Therefore, SW and Harmon argue that the services that they continued to perform were reasonably likely to be necessary and beneficial to the Debtor's estate at the time they were performed.

## The hearing

Based on the IRS Objection and the Reply, it appeared that the primary question the Court would have to answer at the hearing was whether the services rendered by SW and Harmon during the months of July, August, and September, 2019 were necessary or beneficial to the administration of the case or reasonably likely to provide a benefit to the Debtor and the estate. But the hearing took a different turn. The IRS began its remarks at the hearing by raising several new arguments that it did not raise at all in the IRS Objection.

First, the IRS argued at the hearing that the Court should abstain from hearing the two fee applications altogether because the IRS has appealed an earlier ruling of the Court.[1] Second, the IRS argued at the hearing that the Court should grant the IRS an administrative expense and make an indicative ruling under Fed. R. Bankr. P. 8008 regarding payment of that administrative expense. Third, the IRS argued at the hearing that SW and Harmon do not need an award of fees from the Court because they are free to collect their fees directly from the Debtor without the Court's approval. Finally, the IRS argued at the hearing that if the Court does award any fees to SW and Harmon, it should not approve the language that they requested in their fee applications that grants them a judgment under Fed. R. Bankr. P. 7054

---

[1] On November 5, 2019, the Court entered an order that denied a post-dismissal motion filed by the IRS for an accounting, disgorgement and other relief.

for the amounts awarded.  There was no mention of any of these four new arguments in the IRS Objection.

At the hearing, SW and Harmon asked that the Court not consider any of these new arguments raised orally by the IRS at the hearing because they were not set forth in writing in the IRS Objection.

## Discussion

### Arguments not raised in the IRS Objection

First, the Court will address the new arguments made by the IRS orally at the hearing.

The IRS filed the IRS Objection on October 22, 2019.  Even though the hearing was not held for another month, the IRS did not supplement the IRS Objection to raise any of these new arguments.  Nor did the IRS alert SW and Harmon to these new arguments before the hearing.  Basically, the IRS just showed up and surprised everyone at the hearing by opening its remarks with four entirely new arguments that were not addressed either directly or indirectly in the IRS Objection.  The IRS's explanation at the hearing was that it did not think of these arguments until after the Court denied the IRS's motion for an accounting and disgorgement on November 5, 2019.  But even accepting the truth of that explanation, that was still 17 days before the hearing on the two fee applications, which left plenty of time for the IRS to either supplement the IRS Objection or at

least notify SW and Harmon about these new arguments. The IRS had no explanation as to why it did not do so.

Unfortunately, this is not the first time in this case that the IRS has done this. On two prior occasions, the IRS has shown up at hearings that were already fully briefed by the parties and orally raised entirely new arguments not previously raised by the IRS in any paper. The first time was on August 16, 2019. That was the hearing on the Debtor's objection to the IRS's proof of claim. The IRS had filed a secured proof of claim. The Debtor objected and briefed that issue. Yet the IRS showed up at the hearing and announced that it was no longer asserting a secured claim. This was a total surprise to the Debtor, the Court, and other parties.

The second time was on September 6, 2019, at the hearing on the IRS's motion to dismiss this case. The IRS had filed its motion because of the Debtor's non-payment of post-petition taxes and continuing losses. However, the IRS showed up at the hearing with a list of new forms of relief that it orally requested the Court to grant, even though the IRS requested none of them in its motion. These new forms of relief included an injunction, an accounting and disgorgement. The Court declined to consider those new forms of relief at the hearing.

The IRS's penchant in this case for making new, surprise arguments at a hearing that have not been previously made in writing is not favored by the law. "It is a well-established procedural rule in the Sixth Circuit that failure to raise an

argument in a motion acts as a waiver of that argument." <u>United States v. 2007 BMW 335i Convertible</u>, 648 F. Supp. 2d 944, 952 (N.D. Ohio 2009) (citing <u>Scottsdale Ins. Co. v. Flowers</u>, 513 F.3d 546, 552-53 (6th Cir. 2007)). Likewise, arguments not raised in a response or reply are considered waived. <u>Scottsdale Ins. Co.</u>, 513 F.3d at 553. One of the primary purposes of this rule is to give the other party "a fair opportunity to respond to all arguments." <u>2007 BMW</u>, 648 F. Supp. 2d at 953.

The Court holds that the four new arguments made orally by the IRS at the hearing are waived. The Court understands that lawyers sometimes think of new arguments shortly before a hearing. But there are ways to handle it. Parties can always alert an opponent that they wish to make new arguments and ask a court for the opportunity to supplement their papers. But that is not the way the IRS has proceeded throughout this case. Three different times it has showed up at a hearing with a brand new set of oral arguments not in its papers. This practice deprives the other parties to the case of basic due process. It is not permitted by the rules, and is a waste of time for the Court and the parties. Because none of the new arguments advanced at the hearing on November 22, 2019 were raised in the IRS Objection, they are waived.

That said, the Court cannot help but comment about the IRS's lack of support for its new arguments.

First, it's hard to tell whether the IRS's abstention argument has any merit, because the IRS cited no statutory or case law authority in support.

Similarly, the IRS cited no law in support of its oral request for an indicative ruling under Fed. R. Bankr. P. 8008, allowing it an administrative expense request.

The IRS likewise cited no law to support its argument that SW and Harmon may collect any fees owed to them directly from the Debtor without any award of this Court. But even a quick look at the law would show that this argument contravenes controlling precedent in this circuit. The Sixth Circuit has expressly held that there is no obligation to pay a professional for their services to a debtor absent bankruptcy court approval.

> The Bankruptcy Code assigns to courts a comprehensive duty to review fees in a particular case, and 11 U.S.C. § 330 is the sole mechanism by which fees may be enforced. Dismissal of a case, or a private agreement between the debtor and its attorney, cannot abrogate the bankruptcy court's statutorily imposed duty of review. Because § 330(a) requires court approval to create the obligation to pay the attorney's fees, absent court approval neither the debtor nor the estate is liable. Court approval under § 330(a) is what creates the liability, not the performance of the services.

5900 Associates, 468 F.3d at 330-31 (citations omitted).

The IRS's final new argument at the hearing also lacks merit. The IRS asked the Court at the hearing to deny SW's and Harmon's request for a judgment against the Debtor for any fees awarded. The IRS did not explain how *it* has the right to oppose a judgment *against the Debtor* when the Debtor itself does not oppose a

- 11 -

judgment. Nor did the IRS explain why a judgment against the Debtor for the awarded fees is any different in these circumstances from a bankruptcy court order for the awarded fees. A bankruptcy court order granting a fee application both approves the amount requested and provides for payment of that amount. If the bankruptcy case continues, there is ordinarily no need to specify that the order making the award is a judgment, because the debtor remains subject to the court's supervision. But where — as here — the bankruptcy case is already dismissed and the Debtor does not oppose the entry of a judgment for the awarded fees, denying a request for a judgment solely at the request of a third party against whom no relief is sought, serves only to deprive the holder of the fee award from using available proceedings supplementary to judgment to collect the amount awarded.

The Federal Rules of Bankruptcy Procedure authorize the Court to grant a request for a judgment in these circumstances. An objection to a fee application is a contested matter, governed by Fed. R. Bankr. P. 9014. <u>See</u> <u>Halbert v. Yousif</u> (<u>In re Yousif</u>), 201 F.3d 774, 781 (6th Cir. 2000) (concurring opinion) (stating that a fee application, coupled with an objection, is a contested matter under Fed. R. Bankr. P. 9014). Rule 9014(c) expressly imports some of the Part VII rules that govern an adversary proceeding, and makes them applicable to a contested matter. Rule 7054 is one of those rules. Rule 7054(a) incorporates Fed. R. Civ. P. 54(a)

through (c), permitting a court to direct entry of a final judgment. This is an appropriate case for the Court to do so.

The IRS did not support the new arguments that it orally made at the hearing with legal authority, and the Court's own research indicates that these arguments lack merit. More importantly, for the reasons explained earlier, because these arguments were not made in the IRS Objection, the Court holds that they are waived.

<u>Arguments raised in the IRS Objection</u>

Now the Court will turn to its attention to the arguments that actually were made in the IRS Objection, and that were further argued at the hearing. Those arguments concern whether the services rendered by SW and Harmon were necessary or beneficial to the administration of this case, or reasonably likely to benefit the Debtor's estate.

On August 1, 2019, the IRS filed its motion to dismiss because the Debtor failed to pay its post-petition taxes and experienced substantial post-petition losses. Although the Debtor opposed the motion, by the time the motion was heard on September 6, 2019, it was obvious to all that this was a failed Chapter 11 case and there was no defense to the motion. The Debtor withdrew its objection to the motion at the hearing.

That the IRS Objection complains about some of the fees requested by SW and Harmon comes as no surprise to the Court in light of the collapse of this case.

- 13 -

There are legitimate questions in a failed Chapter 11 case like this one as to whether the services of the professionals on behalf of the debtor in possession were truly necessary or beneficial to the administration of the case at the time they were being performed, and whether those services were reasonably likely to benefit the debtor's estate during the time that they were performed. But these questions must be answered by reference to the time that the services were rendered, not in hindsight. In re Williams, 378 B.R. 811, 823 (Bankr. E.D. Mich. 2007). "'In order to benefit the estate, the services rendered must relate to a realistically obtainable goal. Counsel for a debtor or debtor in possession will not be compensated for time spent in preparation of a plan which has no realistic hope of confirmation.'" Id. at 824 (quoting In re Polishuk, 258 B.R. 238 (Bankr. N.D. Okla. 2001)). "'Futile efforts aimed at achieving unattainable objectives are unreasonable. Fees generated in tilting at windmills will be disallowed.'" Id. (quoting In re Saturley, 131 B.R. 509, 521 (Bankr. D. Me. 1991)).

The IRS Objection argues that no fees should be allowed for any time after June 30, 2019, whereas SW and Harmon argue that their fees should be awarded even after that date, subject to SW's agreement to resolve the UST's objection by reducing its fees by $20,000.

Implicit in SW's agreement with the UST is a recognition that at some point SW had to know that this case was going to fail and the Debtor was not going to

- 14 -

reorganize. The primary difference between the IRS on the one hand, and SW and Harmon on the other hand, has to do with the point in time that the professionals should have recognized this. While the IRS Objection argues in a conclusory way that the case was doomed from the start, the IRS Objection focuses on June 30, 2019 because, by that date, the Debtor was indebted to the IRS for more than $166,000.00 in post-petition trust fund taxes. Moreover, the Debtor had suffered a net loss of over $648,000.00 from March 1, 2019 to June 30, 2019. According to the IRS Objection, "By that point, it was clear that the only reason that [the Debtor] had been able to pay its remaining expenses as they came due was that they were misappropriating withheld income and FICA taxes to pay operating expenses. At the point where the reorganization was implausible, [the Debtor] should have voluntarily dismissed the case or at the very least should have limited the expenses its professionals incurred." There is some support for this argument in the case filings.

The monthly operating report filed by the Debtor on May 21, 2019 contains an inconsistency. In the content of the report, it is clear that the Debtor did not pay its withholding tax deposits for the month of April, 2019. Yet on the coversheet of that monthly operating report, the Debtor falsely stated that it had done so. The Debtor did not file a report for the month of May, 2019 by the June 20, 2019 date required by the UST, and it was not until July 20, 2019 that the Debtor filed monthly

operating reports for the months of May and June, both of which reflect unpaid withholding taxes. The IRS is right. The Debtor was not paying its post-petition taxes early on in the case. And it did not have any apparent means to catch up on them. The IRS is correct that the Debtor and its professionals should have known that this case was not going to be successful — if not in May, when the Debtor filed its misleading operating report for April, then certainly by July when it filed operating reports revealing that it did not pay all of its post-petition taxes in May or June.

SW concedes that it did learn in July that the Debtor had not paid its post-petition withholding taxes. But SW states that it immediately contacted both the UST and the IRS to alert them to this fact, and then began concentrating its efforts on assisting the Debtor in obtaining a post-petition loan to catch up with those unpaid post-petition taxes. SW makes the additional point that the IRS was well aware of those efforts, as shown in a string of emails in which Jeff Nunez, the attorney at the Department of Justice representing the IRS, and John Stockdale, the attorney at SW representing the Debtor, discussed the proposed post-petition loan and the steps to be taken to close it. SW argues that not only did the IRS know that the Debtor hadn't paid its post-petition taxes at that point in time, but the IRS was fully informed of the Debtor's efforts to obtain a post-petition loan to catch up, and was actively encouraging those efforts. SW and Harmon argue that the Court should not apply

- 16 -

hindsight to disallow these fees just because the post-petition loan to pay the IRS did not close.

In retrospect, it is easy to see why this case failed. The Debtor had lost significant sums of money both before bankruptcy and shortly after. Worse yet, the Debtor did not pay its post-petition taxes. Those are obvious grounds for dismissal. But those facts do not mean that the case was "doomed to failure from the outset," as the IRS now argues. When the Debtor filed its Chapter 11 case, it had an operating business. At the initial Chapter 11 conference held on March 11, 2019, the Debtor acknowledged it owed a substantial debt to the IRS based on its guarantee of the tax debt owed to the IRS by a related company, Associated Community Services. The Debtor stated that the precipitating event for the Chapter 11 filing was an eviction proceeding by its landlord. The Debtor further explained that the two primary issues in this case concerned liquidation of the amount of the IRS debt and resolution of the dispute with the Debtor's landlord.

The Court file shows that the Debtor, through its professionals, worked extensively on each of these two issues and achieved some success. As to the first issue, the Court file reflects that the Debtor and the IRS litigated over the amount of the IRS's claim and that the IRS filed three separate amendments to its original proof of claim that ultimately reduced the amount of its proof of claim by literally millions of dollars. As to the second issue, the Court file reflects that the Debtor and its

- 17 -

landlord agreed on an interim resolution during the Chapter 11 case that extended the time for the Debtor to assume or reject its lease until the hearing scheduled on confirmation of the plan.

Although the IRS now argues that the case was "doomed to failure from the outset," the IRS did not file its motion to dismiss until August 1, 2019, five months into the case. Further, during that time, the IRS was working with the Debtor to try to make the case successful. The emails attached to the Reply demonstrate that the Debtor, through SW and Harmon, was working with the IRS to try to structure a post-petition loan that would enable the Debtor to pay off its post-petition taxes. And the IRS was cooperating. It was not until July 30, 2019, as demonstrated by Jeff Nunez's emails to John Stockdale, that the terms of an acceptable loan could not be achieved. At that time, when the IRS rejected the loan proposed by the Debtor, this case was effectively over.

Unfortunately, once it became clear that the case was effectively over, the professionals did not cut back their services in this case. Despite the IRS's clear communication that it would no longer support a post-petition loan, SW continued to litigate during the month of August, 2019. Specifically, SW moved forward with the Debtor's motion to estimate the IRS's claim for purposes of voting on a plan, and the Debtor's objection to the priority status of the IRS claim, both issues relevant only to confirmation of a plan. Both proceedings were a waste of time and money.

- 18 -

This case was finished, and there was no chance of a plan of reorganization being approved. SW admits as much in the Reply.

The Court finds that none of SW's and Harmon's services after July 30, 2019 were necessary or beneficial to the case nor reasonably likely to confer a benefit on the Debtor's estate. The Debtor should have just consented to dismissal on July 30, 2019. Instead, the Debtor did not consent to dismissal, forcing the IRS to file a motion to dismiss, which the Debtor then opposed right up to the hearing on September 6, 2019. This needlessly prolonged the case with several more weeks of litigation with the IRS. The Court is not going to compensate the Debtor's professionals for any of the services that were rendered after July 30, 2019.

But the Court does not agree with the IRS that fees incurred prior to that date should be disallowed, and rejects the IRS's contention that the case was "doomed to failure from the outset." The case failed because the Debtor failed to pay its post-petition taxes and suffered substantial losses in its business post-petition. Frankly, SW could have done a better job monitoring whether the Debtor was paying its post-petition taxes along the way. The Court understands that sometimes debtors do things that their lawyers don't approve or even know of, and the facts do not come to the lawyer's attention until too late. But not this case. After all, SW knew well that the Debtor's largest debt was to the IRS for unpaid withholding taxes by a related entity, Associated Community Services, owned by the very same principals,

- 19 -

Richard T. Cole and Robert W. Burland. SW represented Associated Community Services in its own Chapter 11 case and litigated extensively with the IRS in that case. Of all cases, this is the one Chapter 11 case where the Debtor's attorneys should have been extra vigilant in following up to make sure that the Debtor was paying its post-petition taxes in light of the history of the Debtor, its principals and the tax debt.

Still, it is ultimately the Debtor's responsibility, not the Debtor's professionals, to pay the post-petition taxes. Further, there is no dispute that once SW did learn of the Debtor's non-payment of taxes in July, 2019, SW notified the UST and the IRS and worked with the Debtor to develop a proposal for a post-petition loan to catch up with the IRS. The IRS indulged that process throughout July, as evidenced by the exchanges of emails between Jeff Nunez and John Stockdale. The Court finds that during this period, despite the Debtor's failure to meet its obligations, the services that SW and Harmon rendered in assisting the Debtor to try to catch up on its post-petition taxes were reasonably likely to provide a benefit to the Debtor's estate. That this course of action failed is not, in hindsight, a basis to deny fees for the services that were performed in this period of time by SW and Harmon.

## **Conclusion**

The Court has an independent duty to scrutinize all fee applications, even when no objections are raised. It has done so in this case. SW and Harmon are competent, experienced firms with fine reputations. Their hourly rates are reasonable. The services that they performed in this case up to July 30, 2019, as detailed in their fee applications, appear to have been performed within a reasonable amount of time. They also appear to have been necessary to the administration of this case and were reasonably likely, at the time they were performed, to provide a benefit to the Debtor's estate, even though the case eventually failed. Therefore, the Court finds that the fees requested for those services are reasonable under the lodestar approach of In re Boddy. However, after considering the factors set forth in § 330(a), the Court concludes that all fees for services rendered by SW and Harmon after July 30, 2019 should be disallowed because those services were not necessary to the case nor reasonably likely to benefit the estate at the time that they were performed.

The Court allows SW fees in the amount of $94,760.50 and costs in the amount of $3,805.49, and disallows fees in the amount of $37,891.00, consisting of

all fees requested for services rendered by SW after July 30, 2019.[2]  Because the amount disallowed by the Court exceeds the amount of the reduction agreed to between SW and the UST, that agreement is now moot.  The Court allows Harmon fees in the amount of $33,390.00 and disallows fees in the amount of $3,255.00, consisting of all fees for services rendered after July 30, 2019.

Finally, even though the Court has overruled many of the arguments raised by the IRS, and has awarded substantial fees to SW and Harmon, the Court in no way condones the Debtor's failure to pay its post-petition taxes and its disregard of its debtor in possession duties.  The remedy for the Debtor's conduct is not to disallow all of the fees for its professionals if the fees are otherwise compensable, but instead to pursue appropriate remedies against the parties who are responsible for the Debtor's non-payment of taxes.

---

[2]  The SW Application contains categories of services.  The Court's holding applies to those categories as follows:

**SW:**

| CATEGORY | REQUESTED | DISALLOWED | ALLOWED |
|---|---|---|---|
| Case administration | $43,007.00 | $11,624.00 | $31,383.00 |
| Financing | $14,398.50 | $655.50 | $13,743.00 |
| Plan/disclosure stmt. | $20,142.00 | $12,942.50 | $7,199.50 |
| Claims | $23,826.00 | $12,669.00 | $11,157.00 |
| Relief from stay | $8,869.00 | $ - 0 - | $8,869.00 |
| Employment/fee apps | $10,612.50 | $ - 0 - | $10,612.50 |
| Asset recovery/analysis | $11,796.00 | $ - 0 - | $11,796.00 |
| | $132,651.50 | $37.891.00 | $94,760.50 |

The Court will enter separate orders consistent with this opinion.

**Signed on December 3, 2019**



/s/ Phillip J. Shefferly

**Phillip J. Shefferly**
**United States Bankruptcy Judge**